**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **GOLD DIGGERS, LLC, and WAYNE** | : | |
| **DAVID MASSA,** | : | **06cv732** |
|     **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THE TOWN OF BERLIN,** | : | |
| **CONNECTICUT, HERMAN** | : | |
| **MIDDLEBROOKS, JR. and** | : | |
| **THE BERLIN TOWN COUNCIL,** | : | |
|     **Defendants.** | : | |

**RULING ON MOTION FOR PERMANENT INJUNCTION[1], DECLARATORY RELIEF,
AND APPEAL FROM THE DECISION OF THE BERLIN TOWN COUNCIL**

This action concerns the defendant Town of Berlin's (the "Town") regulation of sexually oriented businesses ("SOBs") through a municipal ordinance.   Plaintiffs Wayne David Massa and Gold Diggers LLC seek entry of a permanent injunction and declaratory judgment in their favor due to asserted violations of federal constitutional rights.  Additionally, plaintiffs request this Court to sustain their appeal of the Berlin Town Council's denial of their SOB Application.  For the following reasons, plaintiffs' motion will denied.

**I.  BACKGROUND**

The parties have submitted briefs, a stipulation of facts, and supporting exhibits. At a hearing on July 24, 2006, this Court heard testimony from Diana Denning, the operator of Infrared Café, and Wayne Massa.  This evidence reflects the following factual background.

_____

[1]Plaintiffs do not object to defendants' characterization of their motion as one for a permanent injunction.

1

####    A.  Infrared Café

Plaintiff Gold Diggers LLC is an assignee of a purchase-sale contract from plaintiff Wayne Massa relative to purchase of the business presently known as "Infrared Café," located at 237 New Britain Road in Berlin, Connecticut.  Infrared Café operated as a SOB at this location from February 1, 1997 through February 7, 2006.  The owners of the property at 237 New Britain Avenue are Evangelos and Markella Psillas, who have never operated a SOB at the property.

On January 4, 2005, Diana Denning, as operator of Infrared Café, received a letter from the Town enclosing her license to operate a SOB from January 4, 2005 through January 4, 2006.  The letter advised Denning that renewal required submission of an application at least 30 days prior to expiration of her current license.

In June and December 2005, Denning received letters from the Town advising her of violations of the Town's Ordinance that had occurred since January 2005.

On January 13, 2005, the Town mailed a certified letter to Denning at the Infrared Café advising her that she had failed to apply for renewal of Infrared's SOB license, and that she had received written notice of material violations of Berlin's Sexually Oriented Business Ordinance (the "Ordinance") on two occasions during 2005. The letter explained further:

> For these reasons your license will not be renewed and your right or privilege to operate a Sexually Oriented Business is revoked as of January 26, 2006.  If you fail to terminate the operation of a Sexually Oriented Business on or before this date, further legal action will be taken in accordance with Sec. 14-243 of the Town Code.  You have five days from receipt of this notice to file a written appeal with the Town Manager in accordance with Sec. 14-266 of the Town Code.

The certified letter was signed for by an employee at Infrared Café.  No written appeal was filed with the Town Manager. Thereafter, defendants considered Infrared's license to be revoked as of January 26, 2006.

### B. Plaintiffs' SOB Application

On March 29, 2006, plaintiffs completed an application for a SOB.  Plaintiffs' application sought approval for a business featuring exotic dancers.

Berlin Town Manager Herman Middlebrooks denied plaintiffs' application based upon the provision in the Ordinance, section 14-291(c), prohibiting SOBs from operating less than 250 feet from any residentially zoned land.

Pursuant to section 14-266 of the Ordinance, plaintiff Massa brought an appeal to the Town Council.

On April 24, 2006, the Berlin Town Council held a hearing on the appeal of the denial of plaintiffs' application.  On April 27, 2006, Kathryn Wall, Town Clerk, mailed to Massa the Town Council's written decision, which stated:

> The basis for the Council's decision is that the Town Manager, upon the advice of staff and the Chief Zoning Enforcement Officer, correctly interpreted and applied the Sexually Oriented Business Ordinance (Sec. 14-291 and 292) and the Town's Zoning Regulations (Section XI, subsection Y), both of which require a minimum distance of 250 feet between a sexually oriented business premise and any residentially zoned land.  The residentially zoned land that lies within 250 feet of 237 New Britain Road makes this location inappropriate for the requested license. The Council rejected the applicant's argument that the Town's Ordinance is invalid.

The instant action, which includes an appeal from the decision of the Town Council, was instituted within twenty days from the date of the written decision of the Town Council.

**C. The Ordinance: Purpose and Definitions**

In June 2000, the Town passed its Ordinance regulating SOBs.  Centerfolds, Inc.
v. Town of Berlin, 352 F.Supp.2d 183, 187 (D.Conn. 2004).

In section 14-241, the Ordinance declares its purpose to regulate SOBs to
protect, preserve and promote the health, safety and welfare of the patrons of the
public, prevent property devaluement and promote retail trade.  The Ordinance refers to
the "statistics and studies" performed by other municipalities indicating negative
secondary effects associated with unregulated SOBs, including an increase in crime,
prostitution, spread of disease and other disruptions to municipal order.

Section 14-242 defines, inter alia, (1) "adult cabaret" as an establishment that
"regularly features" nude or semi-nude persons, live or recorded performances
"characterized" by the exposure or depiction of "specified anatomical areas;" and
(2)"adult entertainment" as "any exhibition" that has a "significant or substantial portion
of such performance any performance of specified sexual activities or exhibitions and
viewing of specified anatomical areas. . . ."

Section 14-242 provides further that (1) "nudity" means the "appearance of
human bare buttocks, anus, genitals, pubic region or the areola or nipple of the female
breast . . ." or a "state of dress that fails to opaquely and fully cover human buttocks,
anus, genitals, pubic region or areola or nipple of the female breast . . ."; (2) "seminude"
is "a state of dress in which clothing covers no more than the genitals, pubic region and
areola of the female breast, as well as portions of the body covered by supporting
straps or devices . . ."; (3) the term "sexual activities" does not include medical,
educational or news-related publications or films; and (4) "specified sexual activities"

4

include "[s]howing human genitals in a state of sexual stimulation or arousal; . . . [a]cts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sadomasochistic abuse, fellatio or cunnilingus; . . . [f]ondling or touching another person's genitals, pubic region, buttocks or female breasts; . . . [l]ap dancing; or . . . [e]xcretory functions as part of or in connection with any of such activities."

### D. Licensing Scheme

The licensing scheme codified in section 14-263 of the Ordinance vests the Town Manager with the responsibility "for investigating, granting, denying, renewing, suspending and revoking all sexually oriented business applications and licenses. . . ." The Ordinance requires that all investigation of an applicant and proposed premises shall be completed within 30 days of the application filing date.  The Ordinance sets a specific time period of 45 days from the application filing date for rendering a decision on the application.

The Town Manager "shall" issue to the applicant a license to operate a SOB business unless any one or more of the following eleven specific circumstances are present: (1) the applicant is under 18 years of age; (2) the applicant or any person involved in management of the SOB has been convicted of certain crimes within the last three years of the application filing date; (3) within five years of the application filing, the applicant or applicant's spouse was denied a SOB license by the Town, had the license revoked by the Town, or had an uncorrected material violation after written notice from the Town; (4) within three years of the application filing, another municipality or state denied or revoked the SOB license of the applicant or spouse; (5) failure to pay taxes, fees, fines or penalties relative to operation of the SOB; (6) failure to comply with

all applicable codes, statutes, ordinances or laws; (7) failure to comply with the Town's locational restrictions for SOBs; (8) failure to provide required information for the licensing application; (9) failure to pay the application fee; (10) granting the application would violate a statute, ordinance or court order; and (11) the applicant, if a limited partnership or limited liability company, is not in good standing under state law.  §  14-263(d)

### E. Nonrenewal, Suspension and Revocation Scheme

Section 14-264 provides, in relevant part: "Each license shall expire one year from the date it is issued, unless it is renewed upon application of the licensee accompanied by payment of a renewal fee as listed in appendix D to this Code." Section 14-264 provides that "in no instance shall a renewal be issued to a licensee who, within the one-year period of the previous license has had two or more material violations of this article, to which the licensee has received written notice, or had one or more uncorrected material violations of this article pending for over 30 days."

A SOB license may be suspended for a period not to exceed 30 days if the Town Manager determines that a licensee, operator, or employee "has materially violated any part of this article."  §  14-265.  Section 14-265 requires revocation in accordance with any one or more of the following:  (1) provision of materially false or misleading information, or omission of material facts from any SOB application; (2) failure to pay taxes, fees, fines or other penalties relating to the licensed premises for more than 30 days; (3) conviction of a crime specified in section 14-262(c)(9) by a licensee, operator, employee or other person directly involved in the management or control of the SOB; (4) a licensee has had within a one year period two or more material violations of the

Ordinance for over 30 days, to which the licensee has received written notice; (5) a licensee has one or more uncorrected material violations of this article pending for over 30 days, of which the licensee has received written notice; (6) a licensee has failed to correct within 30 days any violation for which his license was suspended; (7) transfer of the license; (8) a licensee, operator or employee has knowingly allowed any live performance or conduct featuring any specified sexual activities to occur on the licensed premise; (9) a licensee, operator or employee has knowingly allowed any illegal activity to occur on the licensed premises including, but not limited to, prostitution, gambling, or the possession, use or sale of controlled substances; and (10) a licensee, operator, or employee has knowingly operated the SOB while the business' license was under suspension.

After a nonrenewal or revocation, the licensee may not receive a license for five years from the expiration of the previous license or revocation date, respectively.  §§ 14-264(d) and 14-265(d).

### F. Appeal Procedures

Section 14-266 provides that an appeal of an adverse decision may be brought within five days of notification by requesting a public hearing before the Town Council. Immediately following the hearing, the Town Council must enter its vote to sustain or overrule the decision, and a written final decision must be forwarded to the applicant within five days of the public hearing.  Section 14-266(e) states that "[t]he decision of the town council may be appealed to the superior court within 20 days of such written notice of such decision."

During the pendency of "any appeal of a nonrenewal, suspension or revocation, the operations of the sexually oriented business may be maintained by the licensee, unless otherwise ordered by the superior court."  § 14-266(f).

## II.  DISCUSSION

### A. Permanent Injunction and Declaratory Relief

Plaintiffs seek relief pursuant to 28 U.S.C. § 2201 in the form of a declaration that the Ordinance, on its face and as applied to the plaintiffs, violates the First and Fourteenth Amendments to United States Constitution.[2]  Section 2201 provides that "any court of the United States, upon the filing of an appropriate pleading may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  Courts must entertain a declaratory judgment action when (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) it will terminate and afford relief from the controversy giving rise to the proceeding.  Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992).

Plaintiffs also request a permanent injunction to enjoin enforcement of the Ordinance due to its infringement upon their rights pursuant to the First and Fourteenth Amendment.  To obtain a permanent injunction, plaintiffs must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.  New York State Nat. Organization for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989).  In

---

[2]Plaintiffs' complaint alleges that the Ordinance's consent to search provisions violate the First, Fourth and Ninth Amendments. However, plaintiffs do not appear to pursue these claims in their brief.  The Court analyzes only those claims argued in the briefs.

addition, plaintiffs must demonstrate actual success on the merits rather than a likelihood of success, as is required when a preliminary injunction is requested.  Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987).

**B. Standing**

Defendants attack plaintiffs' standing to bring this challenge to the Ordinance.

The doctrine of Article III standing requires a litigant to demonstrate that (1) the litigant must have suffered actual or threatened injury as a result of the illegal conduct of the defendant, (2) the injury is fairly traceable to the challenged action, and (3) the injury is redressable by a favorable decision.  Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982). Plaintiffs asserting claims of First Amendment chilling effects need to articulate a specific future harm or, at least, the threat of such harm. See Laird v. Tatum, 408 U.S. 1, 14 (1972).  Theoretical or conjectural harm is insufficient. See Latino Officers Ass'n v. Safir, 170 F.3d 167, 171 (2d Cir. 1999).

As discussed below, the Court finds that plaintiffs lack standing on their claims challenging the Ordinance's nonrenewal, suspension and revocation scheme and the civil disability provisions, and on the claim asserting vagueness in violation of the due process clause.   However, to ensure complete review of the issues raised, the Court will, in the alternative, assume standing and consider the merits of plaintiffs' arguments.

1. Licensing Scheme

Defendants first argue that plaintiffs lack standing to challenge the licensing scheme because the property is no longer a prior nonconforming adult use that would be permitted by the zoning regulations.

A nonconforming use is a use or structure that is prohibited by the zoning regulations but permitted because of its existence at the time that the regulations were adopted.  Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 710 (1988).  Nonconforming uses are protected under Connecticut General Statutes section 8-2, which provides, in relevant part:

> Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations.  Such regulations shall not provide for the termination of any nonconforming use solely as a result of nonuse for a specified period of time without regard to the intent of the property owner to maintain that use.

A nonconforming use constitutes a vested right adhering to the land itself.  Petruzzi v. Zoning Board of Appeal, 176 Conn. 479, 483 (1979).  "Once a nonconforming use is established the only way it can be lost is through abandonment."  Campion v. Board of Alderman, 85 Conn.App. 820, 843 (2004), rev'd on other grounds, 278 Conn. 500 (2006).  The mere discontinuance of a use without a demonstration of intent to abandon is not sufficient.  Cummings v. Tripp, 204 Conn. 67, 93 (1987).

Whether the property owner intended to relinquish permanently the nonconforming use is a question of fact that may be inferred from the circumstances.  Blum v. Lisbon Leasing Corp., 173 Conn. 175, 181 (1977).  "The party claiming the benefit of a nonconforming use bears the burden of proving that the nonconforming use is valid."  Connecticut Resources Recovery Authority v. Planning & Zoning Commission, 225 Conn. 731, 744 (1993).[3]

---

[3]The issue of which party bears the burden of proof on abandonment is not directly addressed by extant case law.  See Palmieri Cove Associates, LLC v. City of New Haven Board of Zoning Appeals, 2006 WL 894917*5 (Conn. Super. Ct.) (noting

In this instance, defendants maintain that the evidence clearly establishes that Denning intended to cease the nonconforming SOB use.  At the hearing, Denning testified that she failed to apply for a renewal of the SOB license because she never received the notices delivered to Infrared Café in Berlin.

This Court's inquiry must focus upon whether the property owners intended to abandon the nonconforming use that adheres to the property itself.  The parties have adduced only indirect evidence relevant to the owners' intent.  The stipulation that the owners had previously leased the building to an International House of Pancakes indicates that the owners do not have a commitment to leasing the premises to SOBs.  At the same time, the fact that the owners do not object to the contract with Gold Diggers for operation of another SOB at the property evinces an intent not to abandon the vested nonconforming use.   In light of such scant and conflicting evidence, this Court is reluctant to issue a ruling at variance with the Town's determination that abandonment had occurred.  Thus, for purposes of ruling on standing only, the Court finds that plaintiffs have standing due to the property's retention of its prior nonconforming use.

---

that no case spoke directly to a discussion of burden of proof on abandonment, but that courts examine whether substantial evidence exists in the record); but see Robby, LLC v. Watertown Planning and Zoning Commission, 1999 WL 329713 (Conn. Super. Ct.) (concluding that plaintiff failed "to meet its burden of proof to provide sufficient evidence that the nonconforming use was continuous and that there was no intent to abandon the nonconforming use.").

2. Nonrenewal, Suspension and Revocation

Defendants charge that plaintiffs lack standing to challenge the nonrenewal, suspension, revocation and civil disability provisions of the Ordinance, which have yet to be applied to plaintiffs.

Here, plaintiffs are aggrieved SOB licensing applicants that have appealed the Town's decision to deny the licensing application.  If plaintiffs prevail on their appeal, they will be subject to the annual renewal requirements and compliance with the Ordinance to avoid suspension or revocation.

The Court recognizes that it is possible to have standing in certain instances to challenge a SOB licensing scheme even without having applied for such license. Where a law has yet to be enforced against a plaintiff, that plaintiff is required to demonstrate a "credible threat" of enforcement.  Winsness v. Yocom, 433 F.3d 727, 732 (10th Cir. 2006).  In Doctor John's, Inc. v. City of Roy, 465 F.3d 1150, 1156 (10th Cir. 2006), the Tenth Circuit held that an existing SOB had standing to challenge a newly enacted ordinance where the SOB would have been burdened if (1) it complied with the new regulation, or (2) it would face an imminent threat of the ordinance's enforcement against it for noncompliance.

Here, plaintiffs' SOB was not in operation prior to the enactment of the Ordinance.  At present, plaintiffs have not reached the point in which they may be threatened with imminent enforcement of the nonrenewal, suspension or revocation proceedings, having failed to obtain a valid license to operate an SOB.  In order to find that these provisions present such a threat to plaintiffs, the Court would need to

conjecture that plaintiffs will ultimately prevail upon their appeal.  Accordingly, plaintiffs now lack standing to challenge the nonrenewal, suspension and revocation scheme.

### 3. Civil Disability Provision

Plaintiffs' assertion of standing to challenge the civil disability provision of the Ordinance is grounded on their payment of a licensing fee, a portion of which is devoted to funding the criminal background check required for the provision's implementation.

The Supreme Court has made clear that the challenged provisions must be applicable to the plaintiffs.  FW/PBS, Inc. v. Dallas, 493 U.S. 215, 235 (1990) (plaintiffs must have been convicted of civil disability provision's enumerated crimes to establish standing to challenged provision); see also Deja Vu of Cincinnati, L.L.C. v. Union Township Board of Trustees, 411 F.3d 777, 795 (6th Cir. 2005).

Here, plaintiffs admit that they have not been convicted of any crime relevant to the civil disability provision.  Thus, the Court finds that plaintiffs do not have standing to challenge this provision.

### 4. Vagueness

Plaintiffs attack the portion of the Ordinance defining SOBs as impermissibly vague.  Defendants argue that plaintiffs cannot establish an injury based on the alleged vagueness of the Ordinance's definitions that determine whether a business falls under the regulation.   The Court construes plaintiffs' vagueness challenge as asserting both vagueness based on due process and overbreadth.

A regulation must fail for vagueness if its terms are so vague that individuals of common intelligence must guess at its meaning.  Connally v. Gen. Const. Co., 269 U.S.

13

385, 391 (1926).  In <u>Young v. American Mini Theatres, Inc.</u>, 427 U.S. 50, 59-60 (1976), the Supreme Court refused standing to adult theaters on a vagueness challenge analogous to the instant claim.  In so holding, the Supreme Court reasoned that the theaters had clearly alleged that they intended to feature "adult-type" entertainment and therefore the ordinances at issue were "unquestionably applicable" to the theaters.  Since any element of vagueness had not affected the plaintiffs, the theaters could not sustain a challenge predicated on inadequate notice resulting in a due process violation.  <u>See</u> <u>also</u> <u>Gibson v. Mayor and Council of City of Wilmington</u>, 355 F.3d 215, 225 (3d Cir. 2004) ("if the challenged regulation clearly applies to the challenger's conduct, he cannot challenge the regulation for facial vagueness.").

In this instance, plaintiffs allege that the proposed business would include entertainment that features "exotic dancers" and "presentation of First Amendment protected exotic dance performances which contain, as an integral component, other communicative characteristics and an emphasis on human sexuality."  Plaintiffs have also alleged that the "female performers . . . perform sexually expressive routines which would be classified as a 'sexually oriented business' under the Ordinance."  Thus, it appears that plaintiffs intend to operate an SOB and that the Ordinance unquestionably applies to them.  Accordingly, the Court agrees that plaintiffs cannot establish the requisite injury to establish standing for a due process vagueness claim.

Plaintiffs' vagueness challenge may also be construed as asserting overbreadth or that the Ordinance's flawed language compromises First Amendment protected speech of third parties not before the Court.  <u>City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 801 (1984) (discussing overbreadth doctrine).  On such a

challenge, the Court must consider whether such effect is both real and substantial and whether the Ordinance is not readily susceptible to a limiting construction.  <u>Young</u>, 427 U.S. at 61.  Thus, the Court must look to the merits of plaintiffs' arguments to determine the Ordinance's deterrent effect on the protected speech of third parties.

### C. Prior Restraints

Plaintiffs have asserted that the Ordinance's licensing, denial, nonrenewal, suspension and revocation requirements represent prior restraints.  Defendants counter that the Ordinance does not impose any impermissible prior restraint.

Plaintiffs' challenges to the licensing provisions of the Ordinance implicate the standards for regulation of symbolic speech set forth in the constellation of authority relevant to prior restraints and the balancing test of <u>United States v. O'Brien</u>, 391 U.S. 367 (1968).  <u>See</u> <u>Talk of the Town v. Department of Finance and Business Services</u>, 343 F.3d 1063, 1068 (9th Cir. 2003).

### 1. Standards for Prior Restraints

In the area of freedom of expression, a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.  <u>City of Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 757 (1988).  A valid licensing scheme must also provide for limits on the time within which the decisionmaker must issue the license.  <u>FW/PBS, Inc.</u>, 493 U.S. at 225-226.  As <u>FW/PBS</u> warns, a licensing scheme that "fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech."

Where a licensing scheme affords the decision-maker discretion as to the content of protected speech, three procedural safeguards must exist to ensure

15

constitutional validity: (1) any restraint prior to judicial review can be imposed only for a specified period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.  See Freedman v. Maryland, 380 U.S. 51, 58-60 (1965) (reviewing constitutionality of motion picture censorship system).

Only the first two safeguards are required if the decisionmaker performs a ministerial review of the general qualifications of the license applicant without discretion to pass judgment on the content of protected speech.  See Thomas v. Chicago Park District, 534 U.S. 316, 322 (2002); FW/PBS, 493 U.S. at 230.  The Supreme Court has specified that where a regulation conditions the operation of a SOB on compliance with neutral and nondiscretionary criteria without seeking to censor content, the SOB is not entitled to an unusually speedy judicial decision.  Littleton v. Z.J. Gifts D-4, L.L.C., 541 U.S. 774, 784 (2004).

2. O'Brien's Balancing Test

O'Brien instructs that a government regulation is justified if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.[4]  391 U.S. at 376.

---

[4]Courts have also reviewed content-neutral zoning ordinances designed to combat secondary effects of SOBs pursuant to the time, place and manner test articulated in City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986). See e.g., Doctor John's, Inc., 465 F.3d at 1156 (applying Renton); but see Fantasy Ranch

### 3. Nature of the Ordinance

Plaintiffs contend that all of the <u>Freedman</u> factors are applicable since the Ordinance requires the government to make content-based judgments.  Defendants argue that the Ordinance is content-neutral and concerned with the adverse secondary effects relevant to operation of SOBs rather than censorship of adult entertainment.

Since the Ordinance mandates approval or denial of a SOB license according to eleven nondiscretionary criteria, plaintiffs are left to argue that the government must evaluate the content of the expression when it determines whether an applicant falls into one of the adult entertainment categories.  Plaintiffs assert that the Ordinance's definitions of adult cabaret and adult entertainment require content evaluations.

If the regulation of sexually explicit materials is aimed primarily at suppression of First Amendment rights, it is thought to be content-based and so presumptively violates the First Amendment and is subject to strict scrutiny.  <u>Renton</u>, 475 U.S. at 46. However, in the context of regulations aimed at SOBs, the Supreme Court has remarked that "we would poorly serve both the interests for which the state may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries . . . [the State] sought to prevent

---

<u>Inc v. City of Arlington</u>, 459 F.3d 546 (5th Cir. 2006)(applying <u>O'Brien</u>).  Under <u>Renton</u>, a regulation is constitutional so long as it is designed to serve a substantial governmental interest, does not unreasonably limit alternative avenues of communication, and is narrowly tailored to achieve the government's interest.  <u>Renton</u>, 475 U.S. at 47-52.  Thus, <u>Renton</u>'s test embodies the same standards as those set forth in <u>O'Brien</u> and the tests appear to be interchangeable.  <u>Barnes v. Glen Theatre, Inc.</u>, 501 U.S. 560, 566 (1991) (plurality); <u>LLEH, Inc. v. Wichita County, Texas</u>, 289 F.3d 358, 366 (5th Cir. 2002) (applying both tests).  Here, the Court will apply <u>O'Brien</u> since the parties rely upon that test.

by these . . . regulations were the constitutional equivalent of a scantily clad ballet troupe in a theater."  California v. LaRue, 409 U.S. 109, 118 (1972).

Certain regulation of SOBs is permitted without presenting the grave "dangers of a censorship system" confronted in Freedman.  "A licensing standard which gives an official authority to censor the content of a speech differs toto coelo from one limited by its terms, or by nondiscriminatory practice, to considerations of public safety and the like."  Niemotko v. Maryland, 340 U.S. 268, 282 (1951).

In Freedman, the state law at issue required every motion picture film to be submitted to a Board of Censors that enjoyed broad authority to reject films that it considered "obscene" or tended, "in the judgment of the Board, to debase morals or incite crimes."  380 U.S. at 52 n.2.

However, Supreme Court authority illustrates that content evaluations are not inherent to licensing schemes targeting SOBs.  See City of Littleton, 541 U.S. at 783 (licensing scheme for SOBs was content-neutral where its application did not totally suppress the speech); FW/PBS, 493 U.S. at 224 (same).  The Tenth Circuit recently rejected an argument analogous to plaintiffs' that an ordinance afforded undbridled discretion to city officials in determining whether a business must apply for a SOB license.  Doctor John's, Inc., 465 F.3d at 1162.  Doctor John's reasoned that discretion as to what kind of a license a business may operate under is distinguishable from discretion as to whether a business may operate.  Discretion as to whether a business may operate necessarily implicates whether the speech will occur at all, thereby justifying facial invalidation.

As discussed further in this ruling, the instant Ordinance provides for reasonable and definite standards in defining the speech to be regulated and guiding the licensor's determination.  See Thomas, 534 U.S. at 324.  Some license applicants will satisfy the nondiscretionary criteria while others will be denied a license.  See City of Littleton, 541 U.S. at 783.  Accordingly, full Freedman procedural safeguards are not required since the Ordinance does not afford discretion implicating the grave danger of censorship.

### 4. Prompt Judicial Review

Plaintiffs' challenge to the licensing scheme assails the Ordinance for failing to provide for prompt judicial review in accordance with the Freedman factors.  Specifically, plaintiffs contend that Connecticut law does not afford a right of judicial appeal from the decision of a town council.  Defendants counter that the Town Manager and Town Council are acting as agents of the state when they regulate pursuant to state authorization to protect the health, safety and welfare of the town citizenry; therefore, defendants contend that plaintiffs may appeal the decision pursuant to Connecticut General Statutes section 4-183(a).[5]

Alternatively, defendants argue that plaintiffs may obtain judicial review by filing an application for a writ of mandamus in the Superior Court pursuant to Connecticut General Statutes section 52-485(a), or an application for injunctive or declaratory relief in state or federal court.

Under Connecticut law, a local governing body carrying out a state mandated

---

[5]"A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section."  Conn. Gen. Stat. § 4-183.

function may be considered an agent of the state.  See Heigl v. Board of Education,
218 Conn. 1, 4-5 (1991).  Local boards act as agents of the state when fulfilling
statutory duties imposed upon them by the legislature.  R.A. Ciritello Co. v. New Haven,
6 Conn.App. 212, 218 (1986).  Pursuant to Connecticut General Statutes section 7-
148(c)(7), a municipality is afforded the power to regulate "any buildings . . . for the
purpose of promoting the safety, health, morals and general welfare of the municipality.
. . ."  Consistent with the state's delegation of the regulation of SOBs to municipalities,
the Town Council's decision may be considered an analogue to state agency action.
The Town Council acts in a quasi-judicial capacity as an agent of the state when it
issues a decision implementing the Town's state statutory police power to regulate
SOBs.

However, the Court need not resolve whether plaintiffs have a right to appeal
pursuant to Section 4-183.  An aggrieved applicant can also obtain adequate prompt
judicial review through state or federal judicial review procedures by filing an application
for a writ of mandamus[6] or temporary injunction in superior court or, if appropriate, an
action for injunctive or declaratory relief pursuant to § 1983.  In City of Littleton, 541
U.S. at 781, the Supreme Court held that "ordinary 'judicial review' rules offer adequate
assurance, not only that access to the courts can be promptly obtained, but also that a

---

[6]An application for a writ of mandamus may be brought pursuant to Connecticut
General Statutes Section 52-485(a):  where (1) the law imposes on the party against
whom the writ would run a duty the performance of which is mandatory and not
discretionary; (2) the party applying for the writ has a clear legal right to have the duty
performed; and (3) there is no other specific adequate remedy.  Jalowiec Realty
Associates, L.P. v. Planning & Zoning Commission of the City of Ansonia, 278 Conn.
408, 412 (2006); see also Terry J. Tondro, Connecticut Land Use Regulation,
Cumulative Supplement 324 (2000).

judicial *decision* will be promptly forthcoming."  Thus, the Court finds that the Ordinance provides for adequate prompt judicial review.

### 5. License Renewal, Suspension and Revocation

Plaintiffs complain that the Ordinance's license renewal, suspension and revocation provisions, sections 14-264 and 14-265, impermissibly prohibit future protected expression based on findings of past or present undesirable conduct.

Admiral Theatre v. City of Chicago, 832 F.Supp. 1195, 1205 (N.D. Ill. 1993) explains the postulate that censorship occurs where the government prohibits future protected expression based on findings of past or present illegal conduct:

> That principle does not, however, preclude imposing a prohibition on future protected speech as a punishment of past speech that has been *adjudicated* to be illegal . . . . In that way the law draws a line between prior restraints and later punishments permitting only the latter to justify such prohibitions on future speech as the forfeiture of expressive material . . . . But a necessary precondition to placing governmental action on the subsequent-punishment side of that line is that the past speech that forms the basis of the prohibition must have been submitted for a prior judicial determination, together with all the required safeguards, and thereby found to be illegal speech.

Plaintiffs rely on Millenium Restaurants Group, Inc. v. City of Dallas, 181 F.Supp.2d 659 (N.D. Tex. 2001), wherein the district court considered a SOB licensing scheme that mandated revocation based on two convictions of employees for public lewdness over a one year period without requiring the business' management to have had any knowledge of convictions.  Applying O'Brien, the district court held that the provision was a greater restriction on free expression than essential to the furtherance of the governmental interest because the predicate offenses failed to demonstrate that management was careless, reckless or incompetent.  Id. at 665.

21

An adult entertainment license may be constitutionally withheld, suspended or revoked when the licensee has violated valid provisions of a licensing ordinance. See Schultz v. City of Cumberland, 228 F.3d 831, 853 (7th Cir. 2000).  In this respect, the nonrenewal, suspension, revocation provisions are distinguishable from the revocation provision in Millenium.  Here, the Ordinance premises revocation on misconduct known to the licensee, employee or operator.  See § 14-265 (requiring "written notice" of two or more material violations; "licensee, operator or employee has knowingly. . .").

The provisions in the present case are in consonance with the four prongs of O'Brien.  The first and second prongs are met since the Town has the constitutional power to regulate SOBs, and the provisions further an important, even compelling, government interest in reducing or eliminating the negative secondary effects of SOBs in the Town.  The third prong is also satisfied since the grounds for nonrenewal, suspension, or revocation are directed at selecting out SOBs that knowingly tolerate illegal conduct and noncompliance with relevant statutes, codes, laws or regulations.  Accordingly, the provisions further the asserted governmental interest in reducing/eliminating the negative secondary effects associated with SOBs and are unrelated to restriction of free speech.

The fourth O'Brien prong, that the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest, is also satisfied.  A suspension of a license may not exceed 30 days and, the Town Manager must terminate the suspension upon notice and verification of the violation's correction.  The Ordinance's restrictions on expression are cabined to those instances where a licensee knowingly, and either repeatedly or without correction, operates a

SOB in a manner that contributes to negative secondary effects or fails to comply with the law.  The provisions encourage licensees to ensure that no illegal activities take place on the premises and that any violation is promptly corrected.   Further, the appeal procedure affords a procedural safeguard to ensure that suspension, nonrenewal or revocation on speech occurs only where merited.  Since operation of the SOB may be maintained pending the appeal proceedings unless ordered otherwise by the superior court, the restriction on speech occurs after a full adjudication of a contested adverse decision.

Defendants submit that the Town should subject licensees to fines for violations rather than restricting the speech through suspension, nonrenewal or revocation. However, fines may represent a less restrictive but less effective alternative to suspension, nonrenewal or revocation.  As one court has observed, a licensee can pass along the cost of fines to customers as a cost of doing business and continue to engage in violations.  See Krontz v. City of San Diego, 136 Cal.App.4th 1126, 1139 (2006) (ruling that suspension of SOB permit was not prior restraint prohibited by First Amendment).  Accordingly, the Court finds that the challenged provisions are not constitutionally infirm.

6. Civil Disability Provision

Plaintiffs claim that the Ordinance's civil disability provision represents an invalid prior restraint because it precludes protected expression based on prior illegal conduct. Defendants again posit that the provision satisfies O'Brien.

Section 14-263(d) provides, as grounds for a licensing denial, that the "applicant or any other person who will be directly engaged in the management and operation of

23

the business has been convicted in this or any other state of any of the crimes specified in section 14-262(c)(9), regardless of the pendency of any appeal, within three years of the date the application was filed."  The crimes enumerated in section 14-262(c)(9) comprise those involving "moral turpitude, prostitution, obscenity, or other sex-related crimes in any jurisdiction."

Plaintiffs complain that the Ordinance fails to articulate a reason for inserting the civil disability provision into the Ordinance.  However, as defendants submit, this civil disability provision is clearly aimed at reducing the incidence of sex-related crimes, one of the articulated adverse secondary effects targeted by the Ordinance.  As observed by the Sixth Circuit, the civil disability provision serves "to weed out" those most likely to engage in the type of criminal conduct that the Ordinance seeks to reduce.  Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee, 274 F.3d 377 (6th Cir. 2001), cert. denied, 535 U.S. 1073 (2002).  Thus, the provision meets the second and third prongs of O'Brien in that it furthers the Town's substantial interest in combating adverse secondary effects, which interest is unrelated to the suppression of speech.

The Court must further inquire as to whether the provision places an incidental burden on the First Amendment that is no greater than is essential in preventing the stated adverse secondary effects.  Critical to that consideration is whether the enumerated disabling crimes are related to the secondary effects sought to be reduced or prevented and whether the duration of the disability is temporary.  See Doctor John's, Inc., 465 F.3d at 1171 (citing cases reviewing similar provisions).  Here, the limitations within the civil disability provision – – disqualification on the basis of only sex-

related crimes that have occurred within three years of the application – – ensure that licenses are denied only when the individual at issue has recently participated in the type of secondary effect targeted by the Ordinance. See Tee & Bee v. City of West Allis, 936 F.Supp. 1479, 1490 (E.D.Wis. 1996).

Several courts of appeal have upheld similar civil disability provisions.  See Doctor John's, Inc., 465 F.3d at 1170; Deja Vu of Nashville, Inc., 274 F.3d 377.  The instant provision also withstands scrutiny.

### C. Due Process

Plaintiffs contend that the civil disability provision violates due process because it creates an irrebuttable presumption against licensing based upon the conviction of an enumerated crime.  Defendants point out that plaintiffs rely on readily distinguishable precedent.

In Pentco v. Moody, 474 F.Supp. 1001, 1005 (D.C. Ohio 1978), the district court considered an ordinance that denied a license for operation of a massage parlor "if the applicant and any other person who will be directly or indirectly engaged in the management and operation of a massage establishment has been convicted of two or more felonies within the past five years or any sex offense within the past five years." The district court first applied the rational relationship test requiring that the regulation bear a reasonable relationship to the protection of a legitimate governmental goal.  The court found no reasonable relationship between prior felony convictions and operation of a massage establishment.  It noted that the conviction of certain felonies or sex offenses could be a factor for licensing denial, but that the presumption that any felony

conviction "automatically renders an applicant unfit is repugnant to the due process and equal protection clauses of the Fourteenth Amendment."

Similarly, in <u>Lee v. City of Newport</u>, 947 F.2d 945 (6th Cir. 1991), the Sixth Circuit held invalid an ordinance that called for revocation of an occupational license based upon the criminal conviction of the licensee or an employee without any showing that the operator had control over the conduct of the employee, or knew or should have known of the illegal conduct.  The provision permitted deprivation of a protected property interest without any rational relation "to the evils at which the ordinance is allegedly aimed and . . . precluded the licensee from showing that the licensee had no knowledge of any such violations."

The instant Ordinance does not premise denial upon conviction of "any" felony crimes or crimes unrelated to the targeted secondary effects.  Here, the civil disability provision restricts the disabling convictions of applicants or other managerial persons to a period within the last three years of the application and enumerates only crimes specific to the targeted secondary effects.  Accordingly, the provision is rationally related to a legitimate governmental goal, and it does not implicate the due process concerns raised by plaintiffs.

**D. Vagueness**

Plaintiffs accuse the Ordinance of vagueness rendering it invalid as a whole. Plaintiffs seize upon the phrases "regularly features" and "substantial portion" as ambiguous words lacking standards critical to the definition of SOBs affected by the Ordinance.

The vagueness doctrine is rooted in the due process clause and seeks to

26

guarantee fair notice and nondiscriminatory application of the laws.   United States v. Tykarsky, 446 F.3d 458, 472 n.9 (3rd Cir. 2006).  Thus, a statute is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits", or it "authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000).  Language does not delineate with mathematical certainty, and terms may be marked by flexibility and reasonable breadth so long as it is clear what is prohibited.  Grayned v. City of Rockford, 408 U.S. 104, 110 (1972).

Courts have concluded that the language "substantial portion" is not devoid of legislative standards and survives a facial challenge.  See Doctor John's, Inc., 465 F.3d at 1159 (citing cases).  As the Eighth Circuit noted, "substantial portion" is used frequently in the United States Code.  ILQ, Investment, Inc. v. City of Rochester, 25 F.3d 1413, 1419 (8th Cir. 1994).  Most recently, Doctor John's held that the language "significant and substantial portion" provides a flexible and reasonably broad standard for deeming which businesses qualify as SOBs, without vesting complete discretion that forms the ground for facial vagueness.  465 F.3d at 1158-9.

To the extent that "substantial portion" is vague as to the quantity of specified sexual activities or exhibition required, "unavoidable imprecision is not fatal and celestial precision is not necessary." Hart Bookstores, Inc. v. Edmisten, 612 F.2d 821, 833 (4th Cir. 1979).   Plaintiffs' First Amendment right to present sexually explicit material does not merit a more precise clarification given the Ordinance's important purpose to ameliorate the negative secondary effects of SOBs.  See ILQ, 25 F.3d at

1419.   In accordance with Supreme Court teaching, plaintiffs' First Amendment interest in the sexually expressive material may be afforded less vigorous protection than that of socially or politically significant expression:

> The fact that the First Amendment protects some, though not necessarily all, of that material from total suppression does not warrant the further conclusion that an exhibitor's doubts as to whether a borderline film may be shown in his theater, as well as in theaters licensed for adult presentations, involves the kind of threat to the free market in ideas and expression that justifies the exceptional approach to constitutional adjudication recognized in cases like Dombrowski v. Pfister . . . .

Young, 427 U.S. at 61.

The Court need not further belabor the analysis as to the vagueness of "substantial portion," but joins the chorus of precedent holding that this language provides the necessary guidance to enable individuals of ordinary intelligence to understand which businesses fall within the regulation's rubric.

The term "regularly features" also withstands plaintiffs' vagueness challenge. Webster's defines "regular" as "recurring, attending, or functioning at fixed or uniform intervals," and "regularly" as "on a regular basis: at regular intervals."  Webster's Ninth New Collegiate Dictionary, 992 (1987).  One court has also found that "regularly

features" may be construed as "always features".[7]  See Schultz, 228 F.3d at 850

(overbreadth challenge).  Thus, the term "regularly features" notifies individuals of

ordinary intelligence that the material at issue is presented on a consistent and

repetitive basis.

Plaintiffs also claim that the terms of the Ordinance create an ambiguity as to

who should file an application and who should obtain a license.  The Ordinance's terms

relevant to applicants and operators give rise to plaintiffs' professed confusion.  Section

14-262(a) states that "[t]he operator of each sexually oriented business shall submit an

application to the town clerk . . . ."  "Operator" is defined as "any person operating,

owning, managing, conducting or maintaining a sexually oriented business." § 14-242.

Section 14-262(b) provides that "[t]he application shall be signed and filed by a person

having direct control or management of the proposed sexually oriented business."  The

definition of "operator" is broader than the later reference in section 14-262(b) to the

individual signing the application.  Rather than create an ambiguity, read together,

sections 14-262(a) and (b) delineate that the "operator" who must file an application

and sign the application is the individual with the direct control or management of the

SOB.  Thus, the terms of the Ordinance afford individuals of ordinary intelligence notice

as to who should apply and how to obtain a license.

---

[7]Vagueness and overbreadth are viewed as logically related and similar
doctrines.  See Kolendar v. Lawson, 461 U.S. 352, 358-359 n.8 (1983).  Vagueness
and overbreadth claims require similar analysis of the terms and inquiry into the
challenged provision's effect on constitutionally protected activity.  Jordan v. Pugh, 425
F.3d 820, 827 (10th Cir. 2005).

To the extent that plaintiffs allege that the Ordinance's definitions compromise the protected speech of third parties due to overbreadth, such claim also fails.  Here, plaintiffs fail to demonstrate how protected speech would be chilled by the Ordinance. Further, prior case law has upheld regulations using analogous terms.  See Young, 427 U.S. at 60-61 (zoning regulation using "substantial portion" had no real or substantial deterrent effect on protected speech); Pleasureland Museum, Inc. v. Beutter, 288 F.3d 988, 996 (7th Cir. 2002) (same); Schultz, 228 F.3d at 850 ("regularly features" was readily susceptible to narrowing construction)[8]; World Wide Video of Washington, Inc. v. City of Spokane, 227 F.Supp.2d 1143, 1166 (E.D. Wash. 2002) ("significant or substantial portion" lends itself to "the easy identification of a range of constitutionally proscribable conduct.") .

Accordingly, the Court finds that the challenged terms are sufficiently clear to put persons of ordinary intelligence on notice as to what entities are covered under the Ordinance without affording the Town the discretion for arbitrary enforcement.   Further, the language of the Ordinance effects no deterrent or chilling effect on the speech of third parties not before the Court.  The Court rejects plaintiffs' vagueness challenge.

---

[8]In Schultz, the ordinance at-issue defined adult theater and cabaret as a commercial establishment that "regularly features . . . persons who appear in a state of nudity or semi-nude."  The Seventh Circuit observed that a venue featuring nightly showings of *Hair* for a month could potentially qualify the theater as an adult theater or cabaret.

**E. Invalidity of Penalty Provision of Section 14-243**

Plaintiffs challenge the Ordinance's penalty provision as inconsistent with the state enabling statute.  Defendants counter that the provision is within the Town's statutory authority.

Connecticut General Statutes section 7-148(c)(10) provides that a municipality "shall have the power to":

> Make all lawful regulations and ordinances in furtherance of any general powers as enumerated in this section, and prescribe penalties for the violation of the same not to exceed one hundred dollars, unless otherwise specifically provided by the general statutes.  Such regulations and ordinances may be enforced by citations issued by designated municipal officers or employees, provided the regulations and ordinances have been designated specifically by the municipality for enforcement by citation in the same manner in which they were adopted and the designated municipal officers or employees issue a written warning providing notice of the specific violation before issuing the citation.

Plaintiffs complain that the penalty provision fails to designate a municipal officer or employee for enforcement by citation, and fails to require that a prior written warning be issued.

Whether the word "may" denotes a discretionary or mandatory duty is vital to consideration of section 14-243's validity.  Generally, the word "may" in a statute connotes a conferral of discretion.  Waterbury v. Washington, 260 Conn. 506, 530 (2002).  However, there are instances in which the word "may" means "must" or "shall."  Alexander v. Retirement Board of the City of Waterbury, 57 Conn.App. 751, 765 (2000).  Alexander instructs that the word "may" should be interpreted as mandatory rather than directory when the context of legislation permits such interpretation and if the interpretation is necessary to make a legislative enactment effective to carry out its

31

purposes.  In construing the statute, the Court must first look to the text of the statute.

Conn. Gen. Stat. § 1-2z.  In enumerating municipal powers afforded by section 7-148,

the legislature used the phrase "shall have the power to do any of the following . . . ."

However, subsection 10 of section 7-148 (c) provides that a municipality "may" enforce

its regulations and ordinances with the use of citations.  It is a basic tenet of statutory

construction that the legislature does not intend to enact meaningless provisions, and

that there is a purpose behind every sentence, clause or phrase.  Evanuska v. City of

Danbury, 2007 WL 1883*3 (Conn.App.).  Thus, the statutory text indicates that the

legislature was aware of the different meanings attached to the terms "may" and "shall."

See Robinson v. Robinson, 86 Conn.App. 719, 724 (2004).  In this context, "may"

signifies a discretionary power to enforce an ordinance through citation.   Therefore, the

Ordinance does not constitute an ultra vires act of municipal power.

### F. First Amendment and Due Process Challenges to "No-Touch" Provision

Plaintiffs maintain that the Ordinance's "no touch" provision is impermissibly

overbroad and violates the right to freedom of association and substantive due process.

#### 1. Overbreadth

Plaintiffs assert that the provision prohibits innocent touching, such as a

handshake, an accidental contact, or a rebuff of a sexual advance, between a dancer

and a patron.  Defendants submit that physical contact between a nude dancer and

patron is not protected under the First Amendment, and the provision is not directed at

preventing innocent or accidental contact.

In section 14-294, the Ordinance states:

No entertainer, either before, during or after a performance, shall have

physical contact with any patron of a sexually oriented business while on a licensed premises.

In Centerfolds, 352 F.Supp.2d at 192, this Court upheld this same provision on a vagueness challenge, finding that it concerned a prohibition on conduct, without reaching expression protected by the First Amendment.  Similarly, in rejecting an overbreadth challenge to a "no touch" provision, the Fifth Circuit held that the provision was subject to a limiting construction in that it prohibited only intentional contact between a dancer and patron beyond the scope of expression protected by the First Amendment.  Hang On, Inc. v. City of Arlington, 65 F.3d 1248, 1253 (5th Cir. 1995).  If government regulation of secondary effects is allowed, then de minimis intrusions on expression cannot be sufficient to render the Ordinance constitutionally infirm.  See Fantasy Ranch, Inc., 459 F.3d at 557.  The First Amendment does not guarantee the right to engage in protected expression "at all times and places or in any manner that may be desired."  Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981).

 Consistent with Centerfolds, the Court finds that the provision survives O'Brien.  A prohibition on touching between patrons and dancers on site of a SOB is clearly directed at preventing prostitution and the spread of communicable diseases, which represents a substantial interest to the Town.  The Court is not persuaded that the provision burdens accidental or other "innocent" contact, such as a handshake, since it is susceptible to a limiting construction to intentional conduct related to the negative secondary effects targeted by the Ordinance.   "A well-understood and uniformly applied practice" may have the force of a judicial narrowing construction.  City of

Lakewood, 486 U.S. at 770 n.11; See also World Wide Video of Washington, 227 F.Supp.2d at 1165 n.19 (allegedly overbroad ordinance was subject to narrowing construction based on evidence that no enforcement action had been taken against mainstream video stores since ordinance's 2001 enactment).  As defendants assert, no evidence indicates that the provision has been applied to assess a violation based on accidental or other such innocent conduct since the Ordinance's 2000 enactment.

The provision's burden on the First Amendment is only incidental since it is limited to the premises of the SOB, and it  does not significantly impair the protected erotic expression offered at the SOB. See 729, Inc. v. Kenton County Fiscal Court, 2006 WL 2842884*31 (E.D.Ky.) (protected erotic expression does not include commingling or private conversations between entertainers and patrons).  Prohibition of contact between entertainers and patrons diminishes the risk that sexual contact or solicitation will occur.  Thus, the burden is justified since the Town's substantial public health interest would be achieved less effectively without a ban on touching.

### 2. Due Process and First Amendment Freedom of Association

Plaintiffs fare no better on their due process and freedom of association challenges.  Plaintiffs assert that the restriction on touching offends their interests in liberty and free association guaranteed by the Due Process Clause of the Fourteenth Amendment and the First Amendment.

Plaintiffs premise their due process challenge on Lawrence v. Texas, 539 U.S. 558, 579 (2003), in which the Supreme Court invalidated a state statute criminalizing

consensual homosexual sex as a violation of substantive due process.   The Supreme Court reasoned that the state statute furthered no legitimate state interest which could justify its intrusion into the plaintiffs' liberty or privacy interests.

However, consistent with the foregoing discussion, the instant provision's alleged intrusion on the liberty or privacy interests at issue – – innocent socializing between entertainer and patron – –  is justified by the advancement of the Town's interest in reducing adverse effects such as the spread of sexual disease and prostitution associated with SOBs.  See 729, Inc., 2006 WL 282884*33 ("the ability to commingle with patrons . . . is not within zone of privacy rights guaranteed by the due process clause.  .  .").

First Amendment protection embraces two types of associational rights: (1) intimate human relationships, and (2) association for purposes of engaging in protected speech.  Roberts v. United States Jaycees, 468 U.S. 609, 617-618 (1984).  The "no touch" provision implicates the right to associate for expressive purposes.  Deja Vu, 274 F.3d at 396.  However, the right to associate for expressive purposes is not absolute, and "[i]nfringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms."  Id. at 622-23.

While every activity by an individual contains some "kernel of expression" without invoking constitutional protection, the Supreme Court has impugned constitutional protection for a generalized right to "social association" that includes chance encounters in dance halls.  Dallas v. Stanglin, 490 U.S. 19, 25 (1989).  The Court construes the "no

touch" provision as limited to intentional conduct related to the negative secondary effects of SOBs, and the asserted right to innocent touching between entertainer and patron on the premises of a SOB is not likely to be constitutionally protected expression.  However, to the extent that a "kernel" of protected expression exists, the Court finds that the "no touch" provision is content-neutral and justified by the Town's compelling interest in reducing criminal and public health concerns associated with contact between SOB entertainers and patrons.  This interest is not achieved as effectively through significantly less restrictive means.   Accordingly, the "no touch" provision satisfies constitutional muster.

### G. Appeal of Town Council Decision

Plaintiffs contend that the Ordinance's locational restriction is illegitimate since it regulates zoning over which the Berlin Planning and Zoning Commission ("PZC") retains exclusive authority.

Defendants maintain that the Ordinance's locational restriction represents a legitimate exercise of municipal police power, and that the Town Council and the PZC retain concurrent jurisdiction over the regulation of the placement of adult uses.

A municipality is required by statute to delegate the power to zone to a planning and zoning commission, which acts independently of the local legislative body.  See Conn. Gen. Stat. §§  8-1 et seq.; Olson v. Town of Avon, 143 Conn. 448 (1956); T. Tondro, Connecticut Land Use Regulation 10 (2d Ed. 1992).   Thus, defendants do not dispute that the power to enforce or amend zoning regulations vests with the PZC.  See O'Meara v. Norwich, 167 Conn. 579, 581 (1975).

36

However, according to Connecticut law, municipalities have police power over certain areas of regulation that appear to parallel that of zoning.  Connecticut General Statutes section 7-148 affords municipalities the police power to regulate "the mode of using any buildings . . . for the purpose of promoting the safety, health, morals and general welfare of the inhabitants of the municipality. . ." and to regulate and prohibit the carrying on of any business with adverse impacts to public health.[9]

While a municipality's police power appears to overlap areas of regulation with the zoning and planning authority, the Court must still determine whether the Ordinance at issue constitutes a "zoning function" or an exercise of police power.  See T. Tondro, Connecticut Land Use Regulation 9 (2d Ed. 1992).

In State ex rel. Spiros v. Payne, 131 Conn. 647 (1945), the Connecticut Supreme Court faced the question as to whether municipal ordinances were properly considered zoning or an independent police regulation.[10]  Spiros teaches that "the answer must be found" in the nature and purpose of the ordinance, its relation to the general plan of zoning, its provisions, and its terms.

The Connecticut Supreme Court elaborated upon the distinction at issue:

[Z]oning may be defined as a general plan to control and direct the use and development of property in a municipality or a large part of it by dividing it into districts according to the present and potential use of properties.  An ordinance affecting only a single or a few definite areas in a city is not in itself a zoning ordinance, though it designates that area or

_____

[9]Regulations pursuant to a municipality's police power must be supported by a rational basis.  Town of Beacon Falls v. Posick, 212 Conn. 570, 584 (1989).

[10]The municipal ordinances at issue in Spiros prohibited the sale of alcoholic beverages in restaurants located within 300 feet of another restaurant selling alcoholic beverages.

those areas by reference to their description in the zoning ordinance in
effect in the city; e.g. an ordinance forbidding loitering on the streets in
business zones as designated on the zoning map of the city would not in
itself be a zoning ordinance.

Id. at 652.

The Connecticut Supreme Court held the ordinances constituted part of the

general plan of zoning since they covered five of the six zoning districts in the city and

contained provisions that were usually found in zoning regulations.

By contrast, the instant provision affects only a single zoning district since it is

directed exclusively at SOBs, which are relegated to the commercial zoning district by

the Town's zoning code.  Since its terms are consistent with that found in the Town's

zoning ordinances, the provision mandates compliance with the zoning restrictions as a

component of the licensing regulation.  Consistent with this mandate, defendants

sought the advice of the Chief Zoning Enforcement Officer in determining whether

plaintiffs' application met the requirements of the SOB licensing and zoning regulations.

Thus, the provision is not part of the Town's general plan, but is, by its nature and

purpose, a regulation of adult uses pursuant to its legitimate police power.

Alternatively, the Court holds that the provision is legitimate in accordance with

the interpretation of Connecticut law that municipalities and planning and zoning

commissions retain concurrent jurisdiction over regulation of certain activities such as

adult uses.  See Hegyi v. Plan and Zoning Comm'n of Fairfield, 14 Conn. App. 365

(1988) (municipal ordinance rendered moot mandamus action to compel plan and

zoning commission to approve special permit application); T. Tondro, Connecticut Land

Use Regulation 11 (2d Ed. 1992) ("The proper answer in **Hegyi** is that both the zoning

regulation . . . and the ordinance prohibiting landing of aircraft must be given effect, since both the zoning commission and the legislative body do have authority to regulate the proposed activity in the manner in which each chose to act.").

This view of Connecticut law is consonant with the statutory construction of Connecticut General Statutes section 7-148(c)(7). In certain instances – – trailer parks or sand and gravel operations – – the statute delegates a municipality the power to regulate only if a local zoning commission does not exist. Conn. Gen. Stat. § 7-148(c)(7)(A)(iv) & (c)(8)(c). However, other areas of municipal regulation, including that of adult uses, contain no such limitation. Applying the principle of <u>expressio unius est exclusio alterius</u>, the statute indicates that the legislature intended to limit municipal police power to regulate in certain instances even when a zoning commission exists but not in areas lacking such restriction, such as adult uses. <u>See</u> <u>Colangelo v. Heckelman</u>, 279 Conn. 177, 192 (2006) ("the expression of one thing is the exclusion of another").

Accordingly, the appeal cannot be sustained on the ground that the Ordinance's locational restriction is void as an unauthorized zoning regulation.

### III. CONCLUSION

For the foregoing reasons, plaintiffs' motion for permanent injunctive and declaratory relief and appeal from the Town Council's decision [#4] is DENIED.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE


Dated at Bridgeport, Connecticut this _16_th day of January, 2007.